## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

**LAURA COLLINS,**

        **Plaintiff,**

                                **CASE NO.:**

**vs.**

                                **JURY TRIAL DEMANDED**

**ELI LILLY AND COMPANY, a**
**Foreign Profit Corporation,**

        **Defendant.**

_____/

## COMPLAINT  FOR DAMAGES

Plaintiff LAURA COLLINS ("Plaintiff"), through undersigned counsel, files this Complaint against Defendant ELI LILLY AND COMPANY, a Foreign Profit Corporation ("Defendant"), and states as follows:

### I.    NATURE OF COMPLAINT

1.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.* ("Title VII") and the Americans with Disabilities Act ("ADA") to recover from Defendant for back pay, front pay, punitive damages, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering, other monetary damages, equitable relief, injunctive relief, declaratory relief, and

reasonable attorneys' fees and costs.

2.

Plaintiff brings a claim for discrimination and retaliation against Defendant, who subjected Plaintiff to workplace discrimination and retaliation because of her sex, race and disability in violation of Title VII and the ADA.

3.

Plaintiff was wrongfully terminated as the culmination of discrimination and retaliation against her.

## II.    ADMINISTRATIVE PROCEDURES

4.

Plaintiff timely filed her Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging sex, race and disability discrimination and retaliation.

5.

Plaintiff received her Notice of Right to Sue on Charge No. 470-2020-02687 dated January 12, 2021.

6.

Plaintiff filed this Complaint within 90 days of receiving her Notice of Right to Sue. Plaintiff's claims are therefore timely filed.

### III.   JURISDICTION AND VENUE

7.

The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 with federal questions involving Title VII and the ADA.

8.

This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendant in Hall County, Georgia.

### IV.   PARTIES

9.

Plaintiff is a member of protected classes under Title VII and the ADA due to her sex, race and disability.

10.

At all times material to this action, Plaintiff was an "employee" of Defendant within the meaning of the Title VII and the ADA.

11.

Throughout her employment with Defendant, Plaintiff primarily worked in Defendant's territory located in and around Hall County, Georgia.

12.

At all times material to this action, Defendant, was and continues to be a Foreign For-Profit Corporation.

13.

Further, at all times material to this action, Defendant was, and continues to be, engaged in business in Georgia, doing business in, among other counties, in Hall County, Georgia.

14.

At all times material to this action, Defendant was, and continues to be, "employer" within the meaning of Title VII and the ADA.

15.

Defendant is also an employer as defined by ADA and under Title VII of the Civil Rights Act of 1964, as it employed over 15 employees for over twenty calendar weeks in each year relevant to this action.

## VI.   **FACTUAL ALLEGATIONS**

16.

Plaintiff worked for Defendant as a pharmaceutical sales representative from on or about January 2004 to November 2008 and then again from August 2014 until her termination on or about October 11, 2019.

17.

Defendant claims that it is a worldwide leader in cutting-edge pharmaceutical drugs.

18.

While employed by Defendant, Plaintiff developed relationships with customer accounts, managed territories, and generated sales by visiting, meeting and calling physicians in her area to educate them regarding Defendant's products and provide such physicians with samples.

19.

Throughout Plaintiff's employment, Plaintiff kept, to the best of her knowledge, accurate records regarding her sample fridge and complied with all policies and procedures for storing pharmaceutical samples.

20.

Prior to her termination, Plaintiff's had exemplary sales performance over her roughly ten years of employment with sales figures typically at or near the top of her team. Accordingly, Plaintiff was qualified for the position she held and in fact, she excelled as an employee for Defendant.

21.

On or about September 12, 2019, Plaintiff went to a storage unit to retrieve refrigerated drug samples. As Plaintiff was removing the samples, a Trulicity sample box snagged a temperature cable loose inside the refrigerator, which caused the HOBO temperate control to make an audible sound.

22.

Plaintiff quickly noticed the issue and reconnected the cable within 30 seconds. Plaintiff also followed procedures learned in Company Trainings where she had an option to talk to a live person at 1-800-222-INDY if she had questions. The alarm did not have the same error messages that she was familiar with based on training so she was unsure how to proceed.

23.

When Plaintiff contacted 1-800-222-INDY, she was connected to Sample Accountability department where she spoke with a live representative. The live representative explained to her "that everything looked good and that if she had any further questions she could contact CIQ".

24.

Plaintiff was still concerned and out of an abundance of caution, she called back the number provided to her by the Company three times to find the CIQ contact phone number, but there was none.

25.

Later that same day, Plaintiff was in a conference meeting led by her manager, Scott Rech. During this meeting, they were discussing what to do if your HOBO cable disconnected and Plaintiff explained that this scenario had just occurred with the HOBO temperature control. Plaintiff was then instructed by Mr. Rech to send in an alarm report the next day. Plaintiff was assured that she had done nothing wrong and had made every effort to find the correct remedy for the issue. Mr. Rech further added that even most of the managers in the group are unaware of all the rules/procedures regarding HOBO monitor disconnects.

26.

Approximately two weeks later, Plaintiff received a call from the Company's Corporate HQ located in Indianapolis, IN from Global HR investigator, Nikki Holton, who began looking into the alleged incident that had occurred on September 12, 2019.

27.

On or about September 26, 2019, Plaintiff was advised by Ms. Holton that she had made a serious sample violation –despite multiple people previously telling her how she had done nothing wrong. Plaintiff was additionally given a written warning to sign by Ms. Holton stating that I "did not meet expectation" and

she further stated that she would be free to resume working immediately after signing the warning.

28.

In response, Plaintiff had voiced concerns over the language drafted by Ms. Holton in the warning she presented to Plaintiff as it did not accurately reflect the situation or that the person in the Sample Accountability Department had told Plaintiff that "everything looked good."

29.

Plaintiff further explained that she would like for Ms. Holton to try to obtain the transcript from her call with the Sample Accountability department so that she could potentially add that fact to her written warning.

30.

Plaintiff did not ever express refusing to sign the warning, but that she wanted clarification of some of the things in the warning so they accurately reflected what happened.

31.

After Plaintiff's request to Ms. Holton, Plaintiff received an email retracting a prior email stating that I was "okay to sample" again. Shortly thereafter, Plaintiff received a phone call from Ms. Holton and stated that the Sample Accountability

call was not recorded and only had hand written notes logged into the system regarding the event.

32.

On or about October 11, 2019, almost a month after the alleged incident and day after her ten year anniversary, Plaintiff was again contacted by Ms. Holton from the Company's Corporate HQ located in Indianapolis and was advised abruptly that her employment was terminated effective immediately.

33.

Plaintiff was shocked by the change of events as she was approaching her ten year mark with the Company and had followed the exact procedures which the Company had taught to her.

34.

Ms. Holton stated the reason for the termination was because Plaintiff had allegedly followed the wrong procedures on September 11, 2019 and further stated that I learned the correct procedures in Training Course #9194825. However, Plaintiff did exactly what she learned from this course so this was false.

35.

Immediately following her termination, the Company transferred her samples (the same samples that were allegedly mishandled) to another one of her coworkers and upon information and belief; those samples were distributed to clients for consumption by their patients.

36.

Clearly there was nothing wrong with the samples as they were later distributed and there was no actual basis for termination since Plaintiff followed all of the correct protocols and alerted the Company of the potential issue, as required, immediately.

37.

Plaintiff is also aware of another sales representative on her team, Doug Lindsay (Male, African-American) did not have any HOBO temperature control monitors on his sample fridge for weeks and/or months and he continued to distribute drug samples from that fridge during the entire time period without any verification that his sample fridge maintained the correct temperature.

38.

This was discovered by the Company and Mr. Lindsay was not terminated like Plaintiff despite the fact that his was a much more egregious/dangerous example of a violation which continued for weeks/months as opposed to the 15-30 second disconnect of my HOBO monitor. In addition, Plaintiff immediately reported the disconnect to the Company immediately and the temperature of Plaintiff's fridge was definitively never compromised.

39.

Upon information and belie, Mr. Lindsay did not call to report any potential issue with the temperature control of his samples or the lack of a HOBO monitor for weeks/months and having no HOBO temperature control monitor could have seriously injured someone if such drug samples were compromised due to temperature fluctuations and later consumed by a patient.

40.

Despite these egregious facts, Mr. Lindsay was not only terminated like Plaintiff but instead, upon information and belief, received a promotion shortly after her termination from a level 1 sales representative to a level 2 sales representative.

41.

In addition, shortly before Plaintiff's termination, herself and co-workers observed that most of the terminations as of late, including her own, were targeting females instead of males by a wide margin.

42.

Plaintiff also states the Company was aware that she suffered from an auto-immune disorder and regarded me as having a disability resulting in disparate treatment.

43.

Plaintiff was treated differently than other minority, non-disabled sales representatives since Mr. Lindsay does not suffer from any disabilities, is male and is African-American but yet he was not terminated after he was confirmed to have committed a much more egregious temperature control violation with respect to his drug samples.

44.

Finally, with regards to race discrimination, Plaintiff was told by another of her co-workers, Rob Wilson, who was asked to help management identify Hispanic sales representative candidates and that the Company was focused on increasing their percentage of minority sales representatives as opposed to hiring or employing Caucasian sales representatives.

## COUNT I

## DISCRIMINATION BASED ON RACE
## IN VIOLATION OF TITLE VII

### 45.

Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–44 above.

### 46.

Plaintiff is a member of a protected class due to her race.

### 47.

By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against plaintiff on the basis of her race in violation of Title VII.

### 48.

Defendant knew or should have known of the discrimination.

### 49.

The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law.  As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

## COUNT II

## RETALIATION BASED ON RACE
## IN VIOLATION OF TITLE VII

### 50.

Plaintiff re-alleges and adopts paragraph 1-49, as though set forth fully herein.

### 51.

Plaintiff is a member of a protected class under Title VII because she engaged in protective activities.

### 52.

Plaintiff engaged in protected activity when she complained about the discriminations due to her race and national origin.

### 53.

By the conduct described above, Defendant treated Plaintiff differently than her African-American counterparts and engaged in unlawful employment practices and retaliated against Plaintiff because she engaged in protected activities in violation of Title VII.

### 54.

Defendant knew, or should have known, of the retaliation and discrimination that Plaintiff was subjected to.

55.

At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiff's state and federally protected rights.

**COUNT III**

**DISCRIMINATION BASED ON SEX
IN VIOLATION OF TITLE VII**

56.

Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–55 above.

57.

Plaintiff is a member of a protected class due to her sex (female).

58.

By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against plaintiff on the basis of her sex in violation of Title VII.

59.

Defendant knew or should have known of the discrimination.

60.

The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

## COUNT IV

## RETALIATION BASED ON SEX
## IN VIOLATION OF TITLE VII

61.

Plaintiff re-alleges and adopts paragraph 1-60, as though set forth fully herein.

62.

Plaintiff is a member of a protected class under Title VII because she engaged in protective activities.

63.

Plaintiff engaged in protected activity when she complained about the discriminations due to her sex (female).

64.

By the conduct described above, Defendant treated Plaintiff differently than her male counterparts and engaged in unlawful employment practices and retaliated against Plaintiff because she engaged in protected activities in violation of Title VII.

65.

Defendant knew, or should have known, of the retaliation and discrimination that Plaintiff was subjected to.

66.

At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiff's state and federally protected rights.

## COUNT V

## DISCRIMINATION BASED ON DISABILITY
## IN VIOLATION OF ADA

67.

Paragraphs 1-66 above are re-alleged and incorporated herein.

68.

This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.   Defendant was aware of Plaintiff's

disability as she had previously taken medical leave while employed with Defendant regarding same.

69.

Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.   Specifically, as alleged above, Plaintiff was terminated for an alleged violation of Defendant's policies and procedures for which another non-disabled, African-American male was not terminated for.

70.

Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

71.

Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

72.

In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

73.

The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's uncontrolled diabetes.

74.

Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

75.

As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

## COUNT VI

## RETALIATION BASED ON DISABILITY IN VIOLATION OF ADA

76.

Paragraphs 1-75 above are re-alleged and incorporated.

77.

Defendant is an employer as that term is used under the applicable statutes referenced above.

78.

This count sets forth a claim for unlawful retaliation under the Americans with Disabilities Act.

79.

Defendant retaliated against Plaintiff because Plaintiff had a disability under the ADA and/or was perceived to have a disability under the ADA and requested a reasonable accommodation for same.

80.

Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq. or encouraging another to do so.

81.

The foregoing unlawful actions by Defendant were purposeful.

82.

Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's termination.

83.

Plaintiff became a member of a protected class after reporting Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the

unlawful employment practices and the adverse employment actions taken thereafter.

84.

As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

85.

Plaintiff has retained the law firm of MORGAN & MORGAN, P.A. to represent Plaintiff in the litigation and has agreed to pay the firm a reasonable fee for its services.

86.

Plaintiff is entitled to recover her attorneys' fees and costs pursuant to 42 U.S.C. § 2617(a)(3).

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condemnation and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)     All other relief to which she may be entitled.

Respectfully submitted the 8th day of April, 2021

**/s/Jeremy Stephens Esq.**
JEREMY STEPHENS ESQ.
Georgia Bar No.: 702063
**Morgan and Morgan, P.A.**
191 Peachtree Street, N.E., Ste. 4200
Post Office Box 57007
Atlanta, Georgia 30343-1007
Tel: (404) 695-1682
E-mail: jstephens@forthepeople.com

**/s/ Gregory R. Schmitz, Esq.**
GREGORY R. SCHMITZ, ESQ.
(*pro hac pending*)
Florida Bar No.:  0094694
**Morgan and Morgan, P.A.**
20 North Orange Avenue, 15th Floor
Orlando, Florida 32801
Telephone:  (407) 204-2170
Facsimile:  (407) 245-3401
E-mail: gschmitz@forthepeople.com
          Mbarreiro@forthepeople.com
          aperez@forthepeople.com

*Attorneys for Plaintiff*